JMH:ILB
F. # 2022V03190

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                    Criminal Docket No. 95-223 (JMA)

CARLO DONATO,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Ivory L. Bishop, Jr.
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

      The government respectfully submits this memorandum of law in response to the defendant Carlo Donato's second motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act, filed on October 6, 2022 (the "Motion").  Donato is currently serving a 115-year sentence for six gunpoint carjackings, following a 1996 jury conviction for one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371, six counts of carjacking in violation of 18 U.S.C. § 2119, one count of possession of a firearm to commit a crime of violence in violation of 18 U.S.C. § 924(c) and five counts of use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c).

      After filing a series of post-conviction motions, Donato filed his first motion for compassionate release under the First Step Act based upon a policy objection to the stacking of 924(c) penalties, which were in effect at the time of his convictions.  On March 26, 2021, in a 16-page opinion, the Court denied the defendant's first compassionate release motion, finding that (1) there were no extraordinary and compelling circumstances for a reduction in his sentence; and (2) even if there were extraordinary and compelling circumstances, an evaluation of the § 3553(a) factors would outweigh those circumstances.  See ECF No. 158 (Mar. 26, 2021).

      The defendant now brings a second motion for compassionate release that, while styled as a motion for compassionate release, is more akin to another collateral attack on his conviction and sentence.  In an 18-page, single-spaced motion, Donato alleges a litany of reasons explaining why his sentence is unjust citing, among other things, (1) his prior claims

about the impropriety of the stacking of 924(c) counts; (2) his infection and subsequent vaccination for Covid-19; (3) the disparity of his sentence with similarly situated defendants, including his codefendant; (4) his alleged rehabilitation and disciplinary history while incarcerated; and (5) new case law that is allegedly favorable to the defendant.  But since none of the information put forward by the defendant amounts to extraordinary and compelling circumstances warranting a modification of his sentence and since the 3553(a) factors analysis still weighs against a modification of his sentence, the defendant's motion should be denied.

FACTUAL BACKGROUND

At the time of the offenses underlying the defendant's conviction, he was on probation following a March 23, 1993 conviction for Criminal Possession of Stolen Property in Queens County, New York, after he was found in possession of numerous stolen vehicles. (PSR ¶ 130-32). At trial, the government established that the defendant committed six armed carjackings.

I.    Underlying Crimes

       A.    The Silverman Carjacking

On March 27, 1993, Phyllis Silverman entered her 1990 black BMW 750IL, which was parked near the Great Neck railroad station. (T 151-52). As she put on her seat belt, a man subsequently identified as the defendant entered her car through the passenger door. The man pointed a black handgun at her face from a distance she described as "close." (T 158-59). The man said either "Get out" or "Be quiet." (T 153-54). Silverman started shouting and left her car, yelling. She saw the defendant leave her car by the passenger door, travel behind her car, enter it on the driver's side and drive off. (T 154). Irene Messina witnessed this carjacking as she sat in her vehicle nearby, looking for a parking space and hoping that Silverman was leaving a space. (T 308).

The defendant's coconspirator, Ernesto Quintieri, who testified against the defendant at trial, witnessed the defendant commit this carjacking from a distance. Afterward, he drove to a prearranged location on 18th Avenue in Brooklyn. (T 628-31). Quintieri parked his car and waited for the defendant. Twenty minutes later, a smiling Donato arrived in the stolen black BMW. Quintieri entered the BMW and the defendant drove to an area near a

cemetery in Glendale, Queens. Once there, the defendant parked the BMW and removed the license plates from a vehicle parked nearby. The defendant then drove to Howard Beach, Queens, stopping along the way to switch back to the BMW license plates. The defendant also threw out papers that were in the BMW. (T 637-38). The defendant then dropped Quintieri at home. Thereafter, Quintieri saw the defendant driving the BMW in the Ozone Park, Queens area several times during 1993 and early 1994. (T 639-40).

B.   The Wilkins Carjacking

On February 2, 1994, between 3:00 p.m. and 4:00 p.m., as Iris Wilkins started to leave her car, a 1993 Mercedes Benz convertible, her driver's side door was opened by a man subsequently identified as the defendant who said, "Get out, get out!" While Wilkins attempted to gather her belongings, the defendant, who was holding a silver-barreled revolver in his hand and pointing it at her, continued to order her out of the car. As she got out of the car, Wilkins turned to the defendant and asked for her purse. The defendant reached over to the passenger side, retrieved her purse, threw it out the car window and then drove away.

C.   The Kushner Carjacking

On March 2, 1994, as Kushner entered her parked, white 1987 Mercedes Benz, a man subsequently identified as the defendant knocked on her window. The defendant said something to her, but through her closed window she could not make it out. The defendant spoke again but Kushner still could not understand him. (T 331, 357). Kushner then proceeded to a nearby deli. Once parked, she opened the door to get out. She was confronted by the defendant, who pointed a silver handgun in her face and shouted either "Get out of the car" or "Give me the keys" and pulled Kushner's keys out of her hand. (T 333, 357-59).

4

D.  The Koch Carjacking

Erwin Koch was employed as a driver by Alan Cohen, the owner of Sterling Optical.  On April 25, 1994, Koch, a retired police officer, who carried a .38 caliber revolver, drove the Cohens to their home in Old Westbury after a shopping trip.  (T 371-72, 401-02).  After the Cohens left the vehicle, Koch emptied the car's trunk of packages and drove the vehicle, a 1994 silver Mercedes Benz S500, to the rear of the house.  As Koch was placing an umbrella into the trunk, he turned around and in a well-lit area was confronted by a man subsequently identified as the defendant, approximately four feet away, with a black or silver handgun in his hand. (T 373-74, 399, 403).  The defendant said, "Give me the keys."  Upon hearing the demand for the keys, Koch threw them to the ground and started walking away. As he did so, Koch heard the Mercedes Benz start up and saw that it was headed in his direction in a speedy manner.  (T 374-75, 40305).  Unable to move quickly due to a knee injury, Koch drew his revolver and fired at the approaching vehicle hitting one of its side windows.  The car veered out of the Cohen driveway onto a neighbor's lawn and left the scene trailed by another vehicle.  (T 375-76, 405).

E.  The Glass Carjacking

Glass testified that on May 31, 1994, as he sat in his gray 1993 BMW 740IL, the passenger side front door opened and a man subsequently identified as the defendant entered the car with a gun in his hand.  The defendant told Glass to get out of the car. (T 218-19, 271-73).  The defendant pointed a silver-barreled gun with a silver or white stock that looked "like a .45" but was "a smaller version" in Glass' face at a distance of six to ten inches. As the defendant held the gun on Glass, he again told Glass to get out of the car.  Glass began to argue with him.  The defendant repeated his command and thrust the gun closer to Glass.

5

Glass stumbled out of the driver's side and the defendant drove off.  (T 219-21, 273-74).  In a conversation with his co-conspirator Quintieri, the defendant boasted about committing this carjacking.  (T 661-62).

      F.   <u>The Epstein Carjacking</u>

      On June 30, 1994, as Donna Epstein entered her parked green 1993 BMW 740IL and started the engine, her passenger door was opened by a man subsequently identified as the defendant, who pointed a silver handgun at her and told her to get out of the car.  (T 424-27, 445-49).  Epstein estimated that the gun was two feet from her face.  As the defendant held the gun on her, he repeated his command to get out of the car.  Epstein froze.  The defendant repeated his order.  Epstein backed out of her car, leaving behind her handbag, which contained newly purchased, unsigned travelers checks.  (T 427, 449).  Once Epstein was out of her car, the defendant drove off.  (T 428, 450-51).

    II.   <u>Conviction, Sentence, and Appeals</u>

      After a full trial, on May 29, 1996, a jury found the defendant guilty of one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371, six counts of carjacking in violation of 18 U.S.C. § 2119, one count of possession of firearm to commit a crime of violence in violation of 18 U.S.C. § 924(c) and five counts of use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c).  On August 2, 1996, the defendant was sentenced to 119 years' incarceration, a fine in the amount of $175,000 and restitution in the amount of $295,807.25, plus three years supervised release by the Honorable Jacob Mishler.  <u>See</u> <u>Judgment</u>, (ECF No. 73).  The judgment was affirmed by the Second Circuit on April 23, 1997.  <u>See</u> <u>United States v. Donato</u>, 112 F.3d 506 (2d Cir. 1997).

III.    <u>Previous Collateral Attacks</u>

The defendant's post-conviction litigation has been extensive.  It is summarized here for context.  On March 28, 1998, the defendant brought a petition pursuant to 28 U.S.C. § 2255, claiming, among other things, ineffectiveness of counsel.  This petition was denied.  On March 7, 2000, the Second Circuit affirmed the order denying the petition as to the conviction and sentence, except for a potential improper double counting regarding sentencing on the conspiracy count.  See <u>Donato v. United States</u>, 208 F.3d 202 (2d Cir. 2000)(unpub.).

On the resulting remand, the defendant was resentenced by Judge Mishler to 115 years' incarceration to correct the double counting on the conspiracy count.  See <u>United States v. Quintieri</u>, 306 F.3d 1217, 1224-25 (2d Cir. 2002).

The defendant again appealed, contending that: (1) he was denied a hearing to determine his competency to be resentenced; (2) he was improperly sentenced without a new presentence investigation report; (3) the district court failed to consider all required factors in its order of restitution and a fine; (4) the amount of the fine was in error; (5) the district court failed to consider his downward departure motion; and (5) the resentence violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  See <u>Quintieri</u>, 306 F.3d at 1222.

The Second Circuit, on October 9, 2002, decided that the defendant's arguments were without merit, but for his claim that the district court improperly imposed a fine above the amount prescribed by the United States Sentencing Guidelines without explaining its reasons for departure.  <u>Id.</u>  The Court specifically found that "all of DONATO's other arguments are either barred by the law of the case or without merit."  <u>Id.</u>  Therefore, the Second Circuit affirmed in part, but it vacated the imposition of the fine and remanded to the district

7

court for the limited purpose of imposing a fine within the appropriate Guideline range, or imposing a fine above the Guideline range with appropriate explanation.  Id. at 1235.

On July 6, 2005, this Court vacated Judge Mishler's judgment as to the fine imposed, denied the defendant's application to reopen his entire sentence and resentenced him to no fine. On July 12, 2005, and subsequently on August 25, 2005, amended written judgments were entered on the docket.  The defendant appealed the amended judgment, and on May 23, 2006, the Second Circuit summarily affirmed the judgment of conviction.

In 2006, the defendant filed a petition pursuant to 28 U.S.C. § 2241, alleging that (1) he did not understand the proceedings prior to the July 6, 2005 resentencing because he had been denied the services of an Italian interpreter; (2) he was over-medicated at resentencing; and (3) he was misidentified at trial as a carjacker.  See Criminal Case 06-CV-5287 (JS). The Honorable Joanna Seybert denied the petition as a second and successive § 2255 motion, denied it for lack of jurisdiction, and transferred the filing to the Second Circuit for consideration as an application for a second and successive motion.  The Second Circuit denied the application.  See Id., (Dkt. No. 18); see also Donato v. Warden of U.S. Penitentiary, 519 Fed. Appx. 113 (3d Cir. 2013)(unpub.).

In 2012, the defendant filed another 28 U.S.C. § 2241 petition in United States District Court for the Middle District of Pennsylvania. See Donato v. Warden of U.S. Penitentiary, 519 Fed. Appx. 113 (3d Cir. 2013)(unpub.). The defendant alleged that he was actually innocent, and that his trial counsel was ineffective for: (1) failing to obtain an interpreter for his criminal proceedings; (2) waiving his right to testify; and (3) failing to contact the Italian consulate as required by the Vienna Convention on Consular Relations. Id. The Magistrate Judge issued a report and recommendation indicating that the defendant had

failed to show that he could not adequately or effectively obtain the relief he was seeking under § 2255. Id. The defendant filed objections, but the District Court adopted the report and recommendation. The defendant then appealed to the Third Circuit Court of Appeals, which summarily affirmed the dismissal. Id.

In 2013, the defendant moved directly in the Second Circuit for an Order authorizing the district court to consider a successive 28 U.S.C. § 2255 petition. See Docket 06-CV-5287(JS), (Dkt. No. 23). The Second Circuit remanded the matter to Judge Seybert to decide in the first instance. Id. The defendant thereafter moved to amend his petition to also include his claim of actual innocence. Id. (Dkt. No. 24).

On May 7, 2014, Judge Seybert denied the defendant's § 2255 petition on the merits in a 18-page decision, addressing his claims regarding his ability to speak English and need for an interpreter, ineffective assistance of counsel regarding obtaining an interpreter and actual innocence/misidentification and related ineffectiveness. Id. The defendant moved before the Second Circuit for a certificate of appealability, which was denied and his appeal was dismissed on January 14, 2015. See Docket 06-CV-5287 (JS), (Dkt. No. 29).

On December 11, 2014, the defendant filed another habeas petition pursuant to § 2241, again alleging actual innocence, which Judge Seybert on August 5, 2015 ordered to be transferred to the Second Circuit as a successive petition. See Docket 14-CV-7393 (JS), (Dkt. No. 5). On November 13, 2015, the Court of Appeals denied the motion as unnecessary. See Id. (Dkt. No. 6).

On June 20, 2016, the defendant filed another habeas petition pursuant to § 2255 based upon Johnson v. United States, 576 U.S. 591 (2015). See Docket 95-CR-223 (DRH), (Dkt. No. 137). This petition was held in abeyance pending a decision from the Circuit as to

a successive petition. On September 14, 2020, the Court of Appeals denied the petition holding that the carjackings were crimes of violence and as such, the defendant's 924(c) convictions were proper. See Docket 16-1635, (Dkt. No. 67) (mandate issued October 14, 2020).

IV.    Prior Motion for Compassionate Release

On August 17, 2020, the defendant filed his first motion for compassionate release pursuant to the First Step Act, arguing that the elimination of the practice of stacking 924(c) counts and his prison record supported a finding of "extraordinary and compelling circumstances" under 18 U.S.C. § 3682(c)(1)(A). (Dkt. No. 144). On March 26, 2021, the Court denied the defendant's petition, finding that the defendant had not presented any extraordinary and compelling circumstances and even if he had, an analysis of the § 3553(a) factors would weigh against a modification of the defendant's sentence. (Dkt. No. 158). Specifically, the Court noted that "Congress specifically chose not to make its amendment to § 924(c) retroactive." Id. (citing Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018)). The Court went on to say that "[t]hough the disparity in [the defendant's] sentence measured against offenders sentenced after passage of the First Step Act may seem unfair, that disparity was clearly contemplated by Congress when it decided not to make the Act's sentencing reforms retroactive." Id. (internal citations omitted)

The Court also stated that although the defendant's prison record reflected an excellent disciplinary history, his disciplinary history alone, or considered together with the sentencing disparities presented by the 924(c) amendment, did not amount to extraordinary and compelling reasons to justify a sentence reduction. Finally, the Court held that even assuming the amendment, the resulting sentencing disparities, and the defendant's disciplinary

10

history constituted extraordinary and compelling circumstances, an analysis of the 3553(a) factors still weighs against a reduction in sentence.  Specifically, the Court stated

> As recounted above, defendant engaged in repeated acts of violence against innocent citizens, supporting the conclusions that defendant should serve a substantial sentence and that he poses a risk of danger to the safety of others or the community.  Moreover, consideration of general deterrence supports denial of the application.  Defendant's continued confinement serves as a deterrent to others who would engage in similar violent acts against innocent citizens. The 3553(a) factors weigh against the sought reduction.

(Dkt. No. 158).

V.    The Instant Petition

The defendant now brings a second application for compassionate release pursuant to the First Step Act, alleging a litany of reasons why his sentence is unjust, citing, among other things, (1) his prior claims about the impropriety of the stacking of 924(c) counts; (2) his infection and subsequent vaccination for Covid-19; (3) the disparity of his sentence with similarly situated defendants, including his codefendant; (4) his alleged rehabilitation and disciplinary history while incarcerated; and (5) new case law that is allegedly favorable to the defendant.  But since none of these amounts to extraordinary and compelling circumstances warranting a modification of his sentence – in fact most of these arguments were already considered and rejected by the Court – and since the 3553(a) factors analysis still weighs against a modification of his sentence, the defendant's motion should be denied.

## ARGUMENT

I.      Legal Framework

        District courts may reduce a sentence under 18 U.S.C. § 3582(c)(1)(A)(i) where

there are "extraordinary and compelling" reasons to do so and where the Section 3553(a)

factors weigh in favor of a sentencing reduction.  The defendant bears the burden of showing

that there are extraordinary and compelling circumstances.  See United States v. Fleming, No.

18-CR-197 (KAM), 2020 WL 2838511, at *2 (E.D.N.Y. June 1, 2020) ("It is [the defendant's]

burden to show that there are 'extraordinary and compelling reasons' that warrant a

modification of his sentence.").  A court should deny a defendant's motion if it concludes that

either: (1) the defendant has not presented an extraordinary and compelling reason for a

reduced sentence or  (2) the Section 3553(a) factors weigh against release.  See United States

v. Roney, 833 F. App'x 850, 853 (2d Cir. 2020) (explaining that, even if the defendant

presented extraordinary and compelling reasons for release, his motion could be denied based

solely on a consideration of the Section 3553(a) factors); see also United States v. Holmes,

No. 20-484, 2021 WL 2308752, at *1 (2d Cir. June 7, 2021).

II.     The Defendant Has Failed to Exhaust His Administrative Remedies, Failed to
        Raise Any Extraordinary and Compelling Circumstances, and the §3553(a)
        Factors Weigh Against the Relief Sought

        A.      The Defendant Has Not Exhausted His Administrative Remedies

        Title 18, United States Code, Section 3582(c) permits a modification of an

imposed term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon

the motion of the defendant after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf."

Accordingly, before filing a motion for compassionate release under Section 3582(c)(1)(A), an inmate must make a formal request of the warden of his facility for compassionate release. If the warden denies the request, the inmate must appeal the denial to exhaust his administrative rights to appeal. See United States v. Figueroa, No. 15-CR-495 (ARR), 2021 WL 664004, at *2 (E.D.N.Y. Feb. 19, 2021) (finding that the inmate "has likely not exhausted his administrative remedies because there is no indication that he pursued an administrative appeal as directed by the warden"). Nothing in the defendants first or second motions for compassionate release mention any attempts to exhaust his administrative remedies. For this reason alone, the defendant's motion should be denied.

B.    There Are No "Extraordinary and
Compelling" Reasons to Reduce the Defendant's Sentence

Even if the Court waived the exhaustion requirement – and the defendant has offered no reason why the Court should do so – the Court should still deny the defendant's motion because he has not presented any extraordinary and compelling reasons to reduce his sentence. Courts have found that extraordinary and compelling reasons should be "of similar magnitude and importance to [] those specifically enumerated in" United States Sentencing Guidelines Section 1B1.13. United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y. 2020). The phrase "extraordinary and compelling" in the First Step Act — language drawn from former compassionate-release statutes enacted in the 1980s — plainly means as much. 18 U.S.C. § 3582(c)(1)(A)(i); see also Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. II, ch. 2, §§ 212, 217, 98 Stat. 1987, 1998-99, 2023; 18 U.S.C. § 4205(g) (1980). The Court "should be wary of using the motion to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences, while still

honoring Congress's stated intent of increasing the availability of compassionate release." United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020).  But here, as articulated in more detail below, the defendant has not established any extraordinary or compelling reasons that would justify compassionate release or a reduction in his sentence. The defendant merely re-offers reasons that were already rejected by the Court in his prior Motion for Compassionate Release.  But none of these reasons amount to extraordinary or compelling circumstances.

      First, the Court has already rejected the defendant's challenges based on the Amendments to the § 924(c) Stacking Policy and any disparities that might exist between the defendant and any other defendant as a result of that Amendment.  As Judge Hurley also noted, Congress specifically chose not to make its amendment to § 924(c) retroactive.  See Dkt. No. 158 (citing Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018)).  "Though the disparity in [the defendant's] sentence measured against offenders sentenced after passage of the First Step Act may seem unfair, that disparity was clearly contemplated by Congress when it decided not to make the Act's sentencing reforms retroactive."  Musa v. United States, 2020 WL 6873506, at *8 (S.D.N.Y. Nov. 23, 2020) (denying release); United States v. Castillo, 2021 WL 268638, at *3 (S.D.N.Y. Jan. 27, 2021) (same).  In other words, Congress intended to allow there to be disparities between the defendant's sentence and other similarly situated defendants convicted of the same crimes today.  In light of these considerations, the Court found that Congress's amendment to § 924(c) does not constitute an extraordinary and compelling reason for a reduction in defendant's sentence to time served.  See Dkt. No. 158. Accordingly, the defendant's arguments about the amendment to § 924(c) and disparities

14

between his sentence and the sentences of others fails to raise an extraordinary and compelling reason to reduce his sentence.

Additionally, it should be noted that the defendant makes comparison between his sentence and his co-defendant's sentence. However, the evidence adduced at trial shows that the defendant's co-defendant cooperated with law enforcement, provided substantial assistance in the defendant's prosecution by testifying against him and was not the individual who held the victims at gunpoint during the carjackings. The two are simply not similarly situated for purposes of a comparison of sentences.

But the Court had a second reason for rejecting the defendant's disparities argument. As Judge Hurley stated in denying the first motion for compassionate release,

> Setting aside, for the moment, whether defendant's 115 year stacked sentence is fair under Congress's recent amendment to § 924(c), his request for immediate release ignores the fact even without that stacking by the Court's calculation his sentence would be 50 years, far longer than the amount of time he has thus far served.

See Dkt. No. 158. Accordingly, even if the defendant were resentenced under the amended § 924(c), the defendant would have only served half of his sentence so far. No reasonable interpretation of "extraordinary and compelling" includes serving half the time that someone who committed the same crimes today would serve as a basis for a modification of a sentence.

Second, the defendant's mention of exposure to Covid-19 is likewise unavailing since although he contracted the virus, he has since been vaccinated against the virus. Courts have repeatedly held that prisoners who have been vaccinated no longer present an "extraordinary and compelling reason" for a reduction in sentence. See, e.g., United States v. Reiter, No. 87-CR-132 (VSB), 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) ("Because [the defendant] has been vaccinated, [his] health conditions and the spread of COVID-19 [in

15

prison] no longer present an 'extraordinary and compelling reason' for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i)."); United States v. Johnson, No. 94- CR-631 (PGG), 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021) (finding no extraordinary and compelling reasons despite the defendant's obesity—a conceded risk factor for contracting COVID-19—in light of the fact that the defendant had received one vaccination dose, which "mitigates the risks that he would otherwise face from the COVID-19 virus"); see also United States v. Schwarzkopf, No. 21-CR-117 (EK), 2022 WL 706508, at *1 (E.D.N.Y. Mar. 9, 2022) ("'Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines.'") (quoting United States v. Mena, No. 16-CR-850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021)).

Third, the defendant points to his alleged rehabilitation as a potential extraordinary and compelling circumstance warranting a reduction of his sentence. However, this argument too was already rejected by the Court in the defendant's prior motion for compassionate release. Judge Hurley stated in no uncertain terms, when faced with numerous certificates of completion for programs attended while incarcerated, an excellent disciplinary record, and a complementary review regarding his work in food service, "rehabilitation alone cannot constitute an extraordinary and compelling reason justifying a sentence reduction." Dkt. No. 158. (citing United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020); see also 28 U.S.C. § 994(t)).

Fourth, the defendant's arguments that new case law should somehow change the analysis is likewise unavailing. The defendant argues that, contrary to Judge Hurley's opinion, the Second Circuit decided in United States v. Campbell, No. 20-4204-CR, 2022 WL

16

199954, at *2 (2d Cir. Jan. 24, 2022), that the amendment of § 924(c) constitutes extraordinary and compelling circumstances sufficient to warrant a reduction in sentence.  But the defendant either misreads or misunderstands the holding in <u>Campbell</u>.  There, the Second Circuit remanded a case to the district court, not because the amendment constituted an extraordinary and compelling circumstance but to ensure that the district court's decision was not based on a misunderstanding of the law regarding its ability to (1) view the Sentencing Guidelines as advisory under <u>United States v. Booker</u>, 543 U.S. 220 (2005); and (2) select a sentence for a predicate offense with consideration for the severity of the mandatory consecutive minimum sentence under <u>United States v. Brown</u>, 935 F.3d 43 (2d Cir. 2019).  <u>See</u> <u>Campbell</u>, 2022 WL 199954, at *2.  The Court <u>did not</u> hold that the amendment to § 924(c) constitutes an extraordinary and compelling circumstance.  Accordingly, the defendant has not put forth any extraordinary and compelling circumstances that would warrant a reduction in his sentence.

C.     Even if the Court Found an Extraordinary and Compelling Circumstance, the <u>§ 3553(a) Factors Still Weigh Against a Reduction in Sentence</u>

Even if extraordinary and compelling reasons were to exist here (and they do not), the Court should deny the defendant's application in light of the relevant Section 3553(a) factors as the Court did in the face of his first application for compassionate release.  "[A] court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." <u>United States v. O'Neil</u>, No. 17-CR-444 (JMA), 2021 WL 1616915, at *1 (E.D.N.Y. Apr. 26, 2021).

Faced with the defendant's first application for compassionate release, the Court found that even assuming "*arguendo*, that the defendant has demonstrated 'extraordinary and compelling circumstances,' consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), outweighs the reasons for a modification." See Dkt. No. 158. The Court, recounting the nature and violence of the defendant's crimes against innocent citizens, found the nature and circumstances of the defendant's offenses weighed in favor of the defendant serving a substantial sentence. Id. The Court also found that the defendant poses a risk of danger to the safety of others, thus the goals of specific deterrence supports denial of the application, and general deterrence supports a denial of the application because the defendant's incarceration would deter others from engaging in such crimes against innocent citizens. Id. Accordingly, the Court found that "[t]he 3553(a) factors weigh against the sought reduction." Id.

The same analysis should hold here. Nothing has changed in the 16 months since the Court decided the first compassionate release motion. The defendant held six innocent people at gunpoint, with some describing the defendant as holding the gun mere inches from their faces. The defendant's co-conspirator testified that the defendant used the cars he took to joy ride around town and boasted about the terror he caused. Thus, the nature and circumstances of the offenses still weigh against a reduction in sentence.

When looking at the defendant's history and characteristics, it is notable that he acted as the leader in the car jackings, and committed these acts as an adult, not an impressionable, impulsive adolescent. Moreover, the defendant committed the six carjackings while on probation for steal multiple other cars. As a result, this factor too still weighs against a reduction in his sentence.

18

Additionally, general and specific deterrence still support a denial of the reduction in the defendant's sentence as well.  As Judge Hurley found, the defendant still represents a danger to the community.  As such, specific deterrence supports a denial of the defendant's motion.  Additionally, general deterrence is served by the general public seeing the defendant serve a substantial sentence.

The need to avoid unwarranted sentence disparities among defendants with similar records also weighs in favor of a denial of the Motion.  Defendants convicted of similar offenses as the defendant, whose sentences were final before the amendment to § 924(c), are subject to similar sentences.  Accordingly, a denial of the defendant's motion would not create any unwarranted sentencing disparities.

In sum, the defendant has failed to exhaust his administrative remedies and failed to put forward any extraordinary and compelling circumstances that would warrant a reduction in his sentence.  The Court has already decided the all but two of the issues presented in this application.  And for the reasons given above, the defendant's Covid-19 argument and his Campbell argument both fail.  Finally, the § 3553(a) factors still weigh against the requested reduction in sentence.  For all these reasons, the Court should deny the defendant's motion.

<u>CONCLUSION</u>

For the reasons given above, the Court should deny the defendant's motion. Should the Court decide to re-sentence the defendant, the Government respectfully requests the Court set a re-sentencing hearing so that the Government can notify victims so they may be heard if they wish.  <u>See</u> <u>Ebbers</u>, 432 F. Supp. 3d at 424 (holding that the Crime Victims' Rights Act, 18 U.S.C. § 3771, applies to compassionate release proceedings conducted in open court).

Dated:      Brooklyn, New York
            December 16, 2022

                                          BREON PEACE
                                          United States Attorney
                                          Eastern District of New York
                                          271 Cadman Plaza East
                                          Brooklyn, New York 11201


                               By:     <u>/s/ Ivory L. Bishop, Jr.            </u>
                                          Ivory L. Bishop, Jr.
                                          Assistant United States Attorney
                                          (718) 254-6064

20