FILED
CLERK

2:35 pm, Apr 08, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-                                                95-CR-223 (JMA)(AYS)

CARLO DONATO,
                         Defendant.
-----------------------------------------------------------X

**AZRACK, District Judge:**

This Order resolves <u>Pro Se</u> Defendant Carlo Donato's ("Donato") current motion for compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act.  (ECF No. 164 (Def.'s Br.); ECF No. 176 (Def.'s Rep Br.); ECF No. 177 (Def.'s First Supl. Br.); ECF No. 183 (Def.'s Second Supl. Br.)).  In so doing, the Court incorporates by reference the factual and procedural histories and legal analyses contained in prior written decisions denying (i) Donato's appeal of his conviction, <u>see</u> <u>United States v. Donato</u>, 112 F.3d 506 (2d Cir. 1997) (ECF No. 85); (ii) Donato's motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, <u>see</u> <u>Donato v. United States</u>, 208 F.3d 202 (2d Cir. 2000) (ECF No. 97);[1] (iii) Donato's second motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, <u>see</u> <u>Donato v. United</u>

_____

[1]       The Second Circuit denied Donato's ineffective assistance of counsel claims and remanded the case to the district court for resentencing based on a possible sentence calculation error.  After Donato's sentence was recalculated, Judge Mischler resentenced Donato to 115 years' incarceration, three years of supervised release, fined him in the amount of $175,000, and ordered him to pay restitution in the amount of $295,807.25.  (<u>See</u> Am. J., No. 95–CR–0223, ECF No. 106.)  Donato appealed Judge Mischler's resentence.  The Second Circuit affirmed the district court's judgment but remanded the case solely for purposes of either amending the fine to fit within the Sentencing Guidelines range or imposing a fine above the Guidelines range with an explanation for the departure.  <u>See</u> <u>United States v. Quintieri</u>, 306 F.3d 1217 (2d Cir. 2002).  On July 6, 2005, the district court vacated the fine originally imposed and denied Donato's application to reopen his entire sentence.  (<u>See</u> Am. J., No. 95–CR–0223, ECF Nos. 126, 131.)  Donato appealed the judgment, which the Second Circuit affirmed.  (<u>See</u> Mandate, No. 95–CR–0223, ECF No. 132.)

States, No. 06-CV-5287, 2014 WL 1814117 (E.D.N.Y. May 7, 2014) (ECF No. 26); and (iv) Donato's first compassionate release motion, see United States v. Donato, No. 95-CR-223 (E.D.N.Y. Mar. 26, 2021) (ECF No. 158); see also United States v. Quinteri, 2021 WL 5856875 (2d Cir. Oct. 1, 2021) (denying, among other things, Donato's appeal for compassionate release) (ECF No. 163.)  For the below reasons, Donato's current motion for a sentence reduction is GRANTED in part.

## I.    BACKGROUND.[2]

Donato is currently serving a 115-year sentence for six gunpoint carjackings, following a 1996 jury conviction for one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371, six counts of carjacking in violation of 18 U.S.C. § 2119, one count of possession of a firearm to commit a crime of violence in violation of 18 U.S.C. § 924(c) and five counts of use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c).[3]  (See Gov't Opp'n Br. at 1, ECF No. 174.)

Those final six firearms convictions—and the resulting sentences—lie at the heart of Donato's current motion.  Section 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime ... or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime," be sentenced to a mandatory term of

---

[2]    For ease of reference, the Court refers to Donato's brief in support of this instant motion as "Def's. Br." (ECF No. 164), to the Government's opposition brief as "Gov't Opp'n Br." (ECF No. 174), to Donato's reply brief as "Def's. Reply Br." (ECF No. 176), to Donato's brief in support of his First Supplemental Motion as "Def's. First Supl. Br." (ECF No. 177), to Donato's brief in support of his Second Supplemental Motion as "Def's. Second Supl. Br." (ECF No. 183), to the Government's opposition brief to Donato's supplemental motions as "Gov't Opp'n to Supl. Mot. Br" (ECF No. 186), and to Donato's reply brief as "Def's. Reply Supl. Mot. Br." (ECF No. 188).

[3]    At the time of the offenses underlying Donato's conviction, he was on probation following a March 23, 1993, conviction for Criminal Possession of Stolen Property in Queens County, New York, after he was found in possession of numerous stolen vehicles.  (See Gov't Opp'n Br. at 1, ECF No. 174.)

imprisonment, and that this term "shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(A), (D) (2022).  Today, for a first-time offender, the mandatory minimum sentence for a § 924(c) conviction is either 5, 7, or 10 years, depending on whether the gun was possessed, brandished, or discharged. Id. § 924(c)(1)(A)(i)–(iii).  For defendants with a prior § 924(c) conviction, this mandatory minimum jumps to 25 years—a sentence that is "stacked" with, and must be served consecutive to, any other term of incarceration resulting from that conviction.  Id. § 924(c)(1)(C)(i).

At the time of Donato's trial, however, § 924(c) provided that a ratchet-up to (what was then) a 20-year minimum sentence occurred "[i]n the case of [a] second or subsequent conviction under this subsection."[4]  18 U.S.C. § 924(c)(1)(C) (1996).  Thus, when a jury convicted a defendant on multiple counts of violating § 924(c), the first conviction would result in a 5, 7, or 10-year mandatory minimum sentence (as appropriate), while the remaining counts would each result in a 20-year mandatory minimum sentence, all to run consecutively.  See Deal, 508 U.S. at 136.  That was the case for Donato, whose six § 924(c) convictions ultimately resulted in 5, 20, 20, 20, 20, and 20-year terms of incarceration to run consecutively (105 years in total), sentences that were "stacked" together and on top of the 10-year sentence he ended up receiving on the conspiracy and carjacking counts.  See United States v. Quintieri, 306 F.3d 1217, 1224–25 n.4 (2d Cir.

---

[4]       Though lower courts had initially split on the meaning of this provision, the Supreme Court ultimately determined that "'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," including convictions obtained by the Government during the same proceeding.  Deal v. United States, 508 U.S. 129, 132 (1993).

2002) (explaining the complicated procedural history leading to Donato's aggregate prison sentence of 115 years).

The harshness of the "stacked" sentences produced by this regime was widely criticized. See, e.g., Deal, 508 U.S. at 146 n.10 (Stevens, J., dissenting) ("[P]unishing first offenders with twenty-five-year sentences does not deter crime as much as it ruins lives.") (quoting United States v. Jones, 965 F.2d 1507, 1521 (8th Cir. 1992)); see also U.S. Sentencing Comm'n, 2011 Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 359 (2011) ("The 'stacking' of mandatory minimum penalties for multiple violations of section 924(c) results in excessively severe and unjust sentences in some cases."). Congress eventually took note.

In 2018, Congress enacted the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Relevant here, the First Step Act took the extraordinary step of outlawing the draconian practice of "stacking" § 924(c) convictions in a single prosecution for a first offense. See First Step Act § 403(a), Pub. L. 115-391, 132 Stat. at 5221–22, codified at 18 U.S.C. § 924(c)(1)(C). Now, the imposition of such "stacked" mandatory minimum sentences is only permitted "[i]n the case of a violation of [§ 924(c)] that occurs after a prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C) (emphasis added); see also First Step Act § 403(a). In other words, "Congress sought to ensure that stacking applied only to defendants who were truly recidivists." United States v. Henry, 983 F.3d 214, 218 (6th Cir. 2020). Had this version of § 924(c) been in effect at the time of Donato's sentencing, five of his § 924(c) convictions would have resulted in mandatory minimums of just 7 years each. See 18 U.S.C. § 924(c)(1)(A)(ii) (2022). The First Step Act, however, did not make this critical change retroactive for people like Donato

sentenced under § 924(c) before the First Step Act's enactment.  See First Step Act § 403(b), Pub. L. 115-391, 132 Stat. at 5222.

In August 2020, Donato filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing, among other things, that the First Step Act's nonretroactive modification to the stacking of § 924(c) penalties provided an "extraordinary and compelling" circumstance, as required by statute, to effect his immediate release.[5]  (See ECF No. 144.)  On March 26, 2021, in a 16-page opinion, Judge Hurley denied Donato's first compassionate release motion, finding that (1) there were no extraordinary and compelling circumstances for a reduction in his sentence; and (2) even if there were extraordinary and compelling circumstances, an evaluation of the factors set forth in 18 U.S.C. § 3553(a) would outweigh those circumstances.  (See ECF No. 158.) Donato sought summary reversal of Judge Hurley's order, and the Second Circuit denied his motion for compassionate release on October 1, 2021.  (See ECF No. 163.)

On October 6, 2022, Donato brought the instant second motion for compassionate release.  (See ECF No. 164.)  In an 18-page, single-spaced motion, Donato alleges a litany of reasons explaining why his sentence is unjust citing, among other things, (1) his prior claims about the impropriety of the stacking of § 924(c) counts; (2) his infection and subsequent vaccination for COVID-19; (3) the disparity of his sentence with similarly situated defendants, including his co-defendant; (4) his rehabilitation and disciplinary

---

[5]      Before the passage of the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) did not permit defendants like Donato to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf.  See United States v. Phillibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021).  But "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

history while incarcerated; and (5) new case law that is allegedly favorable to Donato.  (See id.)

On February 2, 2023, Donato filed a supplemental compassionate release motion bringing his family circumstances—his mother's health—to the Court's attention ("First Supplemental Motion").  (See ECF No. 177.)  Therein, he argues for a reduced sentence so he can care for his elderly mother who lives in Italy and is purportedly being treated for depression and for lingering effects of COVID-19.  (Id. at 2.)  Donato contends that it is difficult for his brother to care for their mother given his brother's work obligations.  (Id.)

In April 2023, the U.S. Sentencing Commission published preliminary amendments to the Sentencing Guidelines that included proposed revisions to its policy statement that applies to motions for sentence reduction or compassionate release, U.S.S.G. § 1B1.13. Specifically, the Commission responded to the circuit split over whether a nonretroactive change in the law—such as the First Step Act's anti-stacking amendment to § 924(c)— could ever constitute an extraordinary and compelling reason for a sentence reduction.[6] The Commission explained that nonretroactive sentencing changes, under certain circumstances, could indeed be an "extraordinary and compelling" reason.

---

[6]     Almost immediately after the First Step Act took effect, the Sentencing Commission lost its quorum, leaving it "unable to update its preexisting policy statement concerning compassionate release to reflect the First Step Act's changes." United States v. Long, 997 F.3d 342, 348 (D.C. Cir. 2021). This "vexing, [ ] temporary anomaly" left judges to exercise their discretion in considering whether extraordinary circumstances were present. United States v. Andrews, 12 F.4th 255, 259 n.4 (3d Cir. 2021). District courts and courts of appeals around the country set about doing so, and absent guidance from the Sentencing Commission, they splintered on whether an excessively long sentence, such as a stacked sentence handed down under § 924(c) before the First Step Act's passage, could constitute an "extraordinary and compelling reason" for compassionate release. Compare United States v. Andrews, 12 F.4th 255 (3d Cir. 2021) (holding it could not); United States v. McCall, 56 F.4th 1048 (6th Cir. 2022) (same); United States v. King, 40 F.4th 594 (7th Cir. 2022) (same); United States v. Crandall, 25 F.4th 582 (8th Cir. 2022) (same); and United States v. Jenkins, 50 F.4th 1185 (D.C. Cir. 2022) (same) with United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022) (holding it could); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020) (same); United States v. Chen, 48 F.4th 1092 (9th Cir. 2022) (same); and United States v. Maumau, 993 F.3d 821 (10th Cir. 2021) (same).

The Amended Policy Statement U.S.S.G. § 1B1.13 became effective and binding on this Court on November 1, 2023 ("Amended Policy Statement").[7]  Thereunder, district courts may now grant compassionate release or reduce a sentence "[u]pon motion of the Director of the [BOP] or the defendant pursuant to" Section 3582(c)(1)(A).  Policy Statement 1B1.13(a) (emphasis added) (U.S. Sent'g Comm'n 2023) (amended Nov. 1, 2023).  Moreover, the Amended Policy Statement sets forth a list of "extraordinary and compelling reasons" that—singly or in combination—could warrant the reduction of a defendant's sentence.  The relevant reasons to this case include: (1) the defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1)); (2) the defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3)); (3) a change in the law if the defendant received an unusually long sentence and has served 10 years of that term of imprisonment (U.S.S.G. § 1B1.13(b)(6)); and (4) rehabilitation, as long as it is not the only reason (U.S.S.G. § 1B1.13(d)).  See U.S.S.G. § 1B1.13(b)–(d).

On November 6, 2023, five days after the Amended Policy Statement became effective, Donato filed a second supplemental compassionate release motion ("Second Supplemental Motion").  (See ECF No. 183.)  Donato appears to advance several arguments under separate portions of the November 1, 2023 Amendments to justify his early release.  First, he argues that he has been sufficiently rehabilitated since beginning his term of incarceration in 1996.  (Id. at 1 (citing U.S.S.G. § 1B1.13(d)).  Second, Donato contends that he is at risk of serious deterioration in health or death due to a national

---

[7]     Congress expressly delegated the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction" to the Commission.  28 U.S.C. § 994(t).  By promulgating a new policy statement, the Commission has fulfilled its duty to describe what constitutes "extraordinary and compelling reasons" for a sentence reduction.  See Batterton v. Francis, 432 U.S. 416, 425 (1977) (explaining that where Congress has "expressly delegated" a policy matter to an agency, that agency's regulations have "legislative effect," and "[a] reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner").

increase in COVID-19 cases nationally and at FCI Allenwood Medium (where Donato is incarcerated).[8]  (Id. (quoting U.S.S.G. § 1B1.13(b)(1))).  Third, Donato argues this Court can apply U.S.S.G. § 1B1.13(b)(3) to reduce his sentence, reiterating the circumstances described in his First Supplemental Motion surrounding his mother's health.  (Id. at 2–3 (referencing U.S.S.G. § 1B1.13(b)(3))).  Finally, he argues that this Court can apply U.S.S.G. § 1B1.13(b)(6) to reduce his sentence because it involved "outdated stacking" under 18 U.S.C. § 924(c).  (Id. (citing U.S.S.G. § 1B1.13(b)(6))).

On March 7, 2024, the Government opposed Donato's Second Supplemental Motion.[9]  (See ECF No. 186.)  Curiously, the Government neither acknowledges the Sentencing Commission's Amended Policy Statement nor responds to Donato's arguments related to its substantive changes for what constitutes extraordinary and compelling reasons.  (See id.)  Instead, the Government argues in a conclusory fashion that Donato's Second Supplemental Motion reiterates the same arguments that Judge Hurley rejected in March 2021.  (See id. at 4–5.)  That argument is incorrect.  Judge Hurley denied Donato's first compassionate release motion over 2.5 years before the Amended U.S.S.G. § 1B1.13 Policy Statement became effective.  Thus, Judge Hurley could not possibly have considered the amended guidance from the Sentencing Commission that Donato now cites in his Second Supplemental Motion.

---

[8]     Donato also alleges FCI Allenwood Medium violated his Eighth Amendment rights by instituting a lockdown to mitigate the spread of COVID-19.  (See Def's. Second Supl. Br., at 2, ECF No. 183.)  This argument is meritless.  Because the Eighth Amendment prohibits only cruel and unusual "punishments," a prisoner who seeks to establish an Eighth Amendment violation based on conditions of confinement must demonstrate that officials' conduct reflects "the deliberate infliction of punishment," and not just "an ordinary lack of due care for prisoner interests or safety."  Francis v. Fiacco, 942 F.3d 126, 150 (2d. Cir. 2019).  Donato has not made such a showing here.

[9]     On February 8, 2024, the Court granted the Government a one-month extension to file an opposition to Donato's supplemental motions tor compassionate release.  (See Electronic Order dated February 8, 2024.)

On March 21, 2024, Donato replied to the Government's opposition. (See ECF No. 188.) His submission appears to make four main points. First, Donato correctly notes that the Government did not address the Amended Policy Statement or the arguments he made thereunder in his Second Supplemental Motion. (See id. at 1.) Second, Donato reiterates the arguments under separate portions of the November 1, 2023 Amendments that he made in his Second Supplemental Motion. (See id. (citing U.S.S.G § 1B1.13(b)–(d))). Third, Donato argues that his release would be consistent with the § 3553(a) factors. (See id. at 1–2.) Considering the foregoing, Donato requests that this Court reduce his term of imprisonment to 30 years, after which he will be transferred into ICE custody for immediate deportation to Italy pursuant to a deportation order. (See id. at 2.)

For the below reasons, this Court finds Donato has established extraordinary and compelling reasons warranting a modification of his sentence. But since the § 3553(a) factors weigh against a reduction of his sentence to time served, Donato's motion for immediate release is denied.

## II.    LEGAL STANDARD.

Upon the motion of a criminal defendant who "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce the defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). To grant such a motion, the Court must find that (1) "extraordinary and compelling reasons warrant such a reduction;" (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;"[10] and (3) the §

---

[10]    In 2020, the Second Circuit determined that the applicable policy statement—U.S.S.G. § 1B1.13— does not apply to motions for compassionate release filed by defendants because the statement's language

3553(a) factors weigh in favor of a reduction in sentence.  Id.; see also United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (recognizing that both "extraordinary and compelling reasons" and support of the § 3553(a) factors are necessary to grant relief). The defendant bears the burden of showing he is entitled to a sentence reduction.  See United States v. Ebbers, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Ultimately, a district court's decision to grant compassionate release or to reduce a sentence under § 3582(c)(1)(A) will be reviewed for abuse of discretion.  See Keitt, 21 F.4th at 71; see also United States v. Holloway, 956 F.3d 660, 664 (2d Cir. 2020).  "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions."  United States v. Saladino, 7 F.4th 120, 122 (2d Cir. 2021) (emphasis omitted) (quoting Warren v. Pataki, 823 F.3d 125, 137 (2d Cir. 2016)).  Notably, district courts have "broad" discretion to determine what constitutes an extraordinary and compelling reasons.  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).  And mere disagreement with "how the district

---

referenced only motions filed by the Director of the Bureau of Prisons.  See United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020).  As mentioned, the Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants.  See U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant, ... the court may reduce a term of imprisonment ....") (emphasis added).  As a result, courts in this circuit have determined that "Brooker does not apply to the new version of Policy Statement 1B1.13 .... [and that] to grant a motion for compassionate release, a court must now ... find that granting such relief is consistent with Policy Statement 1B1.13."  United States v. Feliz, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); see also United States v. Andrews, 2023 WL 8477993, at **2–5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release).  Accordingly, the amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.  See generally U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023); see also United States v. Lopez, 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

court balance[s] the § 3553(a) factors" is also not a sufficient ground for finding an abuse of discretion.  United States v. Halvon, 26 F.4th 566, 569 (2d Cir. 2022) (quoting United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020)).

### III.    ANALYSIS.

**A.    Exhaustion**

This Court first examines whether Donato has satisfied § 3582(c)(1)(A)'s exhaustion requirement.  A defendant may bring a motion to reduce his sentence under 18 U.S.C. § 3582(c), as amended by the First Step Act, only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Id. § 3582(c)(1)(A)(i) (emphasis added).  Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.  Id.

Donato explains that he submitted a request for compassionate release to the warden at FCI Allenwood Medium on August 18, 2022, and he contends that thirty days have lapsed since the receipt of his request by the warden of his facility.  (See Ex. 1 at 1, 11, Def's. Br., ECF No. 164.)  The Government has never disputed this point.  (See Gov't Opp'n Br., at 12–13, ECF No. 174; see also Gov't Opp'n to Supl. Mot. Br., at 3, ECF No. 186 ("Assuming the defendant has exhausted his administrative remedies….")).  Accordingly, the Court concludes that Donato has exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).

**B.      Extraordinary and Compelling Reasons**

As mentioned, the Sentencing Commission's Amended Policy Statement identifies six circumstances that, singly or in combination, may qualify as extraordinary and compelling reasons.  See U.S.S.G. § 1B1.13(b).  Only three are relevant here:

1.  ***Medical circumstances of the defendant***.  U.S.S.G. § 1B1.13(b)(1).  In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, id. § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, id. § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." Id. § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. See U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

3.  ***Family circumstances of the defendant***.  Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction.  See id. § 1B1.13(b)(3).

6.  ***Unusually long sentence plus changes in law***. Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. See U.S.S.G. § 1B1.13(b)(6).

U.S.S.G. § 1B1.13(b).

Pursuant to 28 U.S.C. 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of the Amended Policy Statement.  See U.S.S.G. § 1B1.13(d).  However, rehabilitation of a defendant while serving his sentence "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  Id.

1.    "Unusually Long Sentence"

As discussed above, the newly promulgated § 1B1.13(b)(6), entitled "Unusually Long Sentence," provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.C. § 1B1.13(b)(6).

Donato has already been incarcerated for 28 years, and his sentence of 115 years is—without doubt—an unusually long one.  The Government appears to concede that Donato's six firearms convictions do not warrant a sentence of over 100 years today.  (See Gov't Opp'n Br., at 15, ECF No. 174 (quoting United States v. Donato, No. 95-CR-223, at 13 (E.D.N.Y. Mar. 26, 2021) (ECF No. 158))).  By way of comparison, the average federal sentence for murder within the Second Circuit in 2022 was about 19 years.[11]  In this Court's

---

[11]    Sentencing Commission, Statistical Information Packet, Fiscal Year 2022, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/2c22.pdf.

view, the First Step Act's modifications to § 924(c) certainly produce a "gross disparity" between Donato's sentence and the one he would likely receive today.   U.S.S.C. § 1B1.13(b)(6).   Today, Donato would likely be subject to a 50-year sentence if charged today in the same initial § 924(c) prosecution—a 65-year difference.[12]

Here, the question is not whether, broadly speaking, changes in sentencing law are "extraordinary and compelling" reasons to reduce a sentence.  It is instead the appalling length of Donato's sentence in absolute terms—and the magnitude of disparity between Donato's sentence and what a similarly situated defendant would face today—that together constitute an "extraordinary and compelling" reason.[13]  This defendant-specific approach to the language of the statute is reflected in the Sentencing Commission's decision only to allow consideration of nonretroactive changes in the very narrow circumstances outlined in § 1B1.13(b)(6).  When considered alongside Donato's development since his sentencing,

---

[12]        Applying the First Step Act, the Court would calculate Donato's sentence today as follows: For a first-time offender, the mandatory minimum sentence for Donato's § 924(c) conviction for possessing a firearm to commit a crime of violence would be 5 years.  See 18 U.S.C. § 924(c)(1)(A)(i).  Donato's five § 924(c) convictions for using a firearm during the commission of a crime of violence would have resulted in mandatory minimums of 7 years each, for a total of 35 years.  See 18 U.S.C. § 924(c)(1)(A)(ii).  Those 40 years of imprisonment would run consecutively to the 10-year sentence he could receive for his conspiracy to commit carjacking and the substantive carjacking, for a total sentence of 50 years.  See 18 U.S.C. § 371; see also 18 U.S.C. § 2119.

[13]        Other district courts in this Circuit have concluded similarly.  See, e.g., United States v. Ballard, 552 F. Supp. 3d 461, 468–69 (S.D.N.Y. 2021) (finding "gross disparity" between sentences of 50 years (of stacked time initially imposed) and 25 years); United States v. Ellerby, 2020 U.S. Dist. LEXIS 216657, at *6 (E.D.N.Y. Apr. 9, 2020) (finding "gross disparity" between sentences of 45 years (of stacked time initially imposed) and 15 years); United States v. Byam et al., 12-cr-586, ECF No. 284 (E.D.N.Y. Oct. 24, 2022) (finding "disparity" between sentences of 32 years (of stacked time initially imposed) and 17 years); United States v. Watts, 2023 WL 35029, at *14 (E.D.N.Y. Jan. 4, 2023) (finding disparity between sentences of 92 years (of stacked time initially imposed) and 37 years); United States v. Sessoms, 565 F. Supp. 3d 325, 326 (E.D.N.Y. 2021) (finding "disparity" between sentences of 35 years (of stacked time initially imposed) and 17 years); United States v. Campbell, 647 F. Supp. 3d 76, 87 (E.D.N.Y. 2022) (finding "disparity" between sentences of 125 years (of stacked time initially imposed) and 35 years); United States v. Williams, 2022 WL 1488695, at *7 (E.D.N.Y. May 11, 2022) (finding "disparity" between sentences of 145 years (of stacked time initially imposed) and 40 years); United States v. Reid, 2021 WL 837321, at *7 (E.D.N.Y. Mar. 5, 2021) (finding "disparity" between sentences of 119.5 years (of stacked time initially imposed) and 38 years); see also United States v. Redd, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020) (finding "gross disparity" between sentences of 45 years (of stacked time initially imposed) and months and 15 years).

14

discussed below, this Court has no hesitation in concluding that Donato's circumstance is exactly the sort envisioned by the Commission in drafting § 1B1.13(b)(6).

      2.     <u>Donato's Remaining "Extraordinary and Compelling Reasons"</u>

In his Second Supplemental Motion, Donato also argues that his medical circumstances, his family circumstances, and his rehabilitation also constitute "extraordinary and compelling" reasons to reduce his sentence.  (<u>See</u> Def's. Second Supl. Br., ECF No. 183 (citing §§ 1B1.13(b)(1), 1B1.13(b)(3), and 1B1.13(d))).  Having already determined that Donato's "Unusually Long Sentence" under § 1B1.13(b)(6) alone constitutes an "extraordinary and compelling" reason to reduce his sentence, the Court need not go further.  But for the sake of completeness, the Court considers whether Sections 1B1.13(b)(1), 1B1.13(b)(3), and 1B1.13(d) of the Sentencing Commission's Amended Policy Statement constitute "extraordinary and compelling reasons" to reduce Donato's sentence in their own right.

      a.     *Medical Circumstances of the Defendant*

Donato contends that he is at risk of serious deterioration in health or death due to a national increase in COVID-19 cases nationally and at FCI Allenwood Medium (where Donato is incarcerated).  (<u>See</u> Def's. Second Supl. Br., at 1, ECF No. 183.)  Section 1B1.13(b)(1) of the Commission's Amended Policy Statement identifies four circumstances under which a defendant's medical condition may provide an "extraordinary and compelling reason" for relief.  <u>See</u> U.S.S.G. § 1B1.13(b)(1)(A)–(D).  Only the fourth circumstance is relevant here.  Under § 1B1.13(b)(1)(D), relief may be warranted if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease, or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

Donato has not demonstrated an entitlement to relief under § 1B1.13(b)(1)(D) of the Amended Policy Statement. His argument related to potential COVID-19 exposure is unavailing; even though Donato contracted the virus, he has since been vaccinated. (See Gov't Opp'n Br., at 15, ECF No. 174.) District courts in this Circuit have repeatedly held that possible COVID-19 exposure does not provide an "extraordinary and compelling" reason to reduce a sentence for prisoners who have been vaccinated against the virus. See, e.g., United States v. Reiter, 2021 WL 1424332, at *8 (S.D.N.Y. Apr. 15, 2021) ("Because [the defendant] has been vaccinated, [his] health conditions and the spread of COVID-19 [in prison] no longer present an 'extraordinary and compelling reason' for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i)."). Accordingly, Donato fails to show that his medical circumstances constitute an "extraordinary and compelling reason" to warrant his early release or to reduce his sentence.

> b.    *Family Circumstances of the Defendant*

In his First and Second Supplemental Motions, Donato argues his family circumstances warrant an early release, citing his elderly mother who is being treated for depression and lingering symptoms from COVID-19 in Italy. (See Def's. First Supl. Br., at 2–3, ECF No. 177; see also Def's. Second Supl. Br., at 4, ECF No. 183.) The guidelines identify four situations in which the family circumstances of a defendant constitute an

"extraordinary and compelling reason" warranting early release.   See U.S.S.G. § 1B1.13(b)(3)(C).  The third situation—the only relevant one here—is when the defendant would be "the only available caregiver" for an incapacitated parent.   U.S.S.G. § 1B1.13(b)(3)(C).  To make such a showing, district courts in this Circuit generally require the defendant to "provide several sources of evidence" that the defendant is, in fact, the only available caregiver.  United States v. Sharma, 2023 WL 4305054, at *3 (E.D.N.Y. June 30, 2023) (internal quotations omitted); see also United States v. Lindsey, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (concluding defendant failed to meet "several sources" burden in claiming he was the only available caregiver).

Here, Donato fails to meet his burden either to show the extent of his mother's need for care, or that there he is the sole available caregiver for her.[14]  Instead, Donato contends in a conclusory fashion that it is difficult for his brother to care for their mother considering his brother's work schedule.  (See Def's. First Supl. Br., at 2, ECF No. 177.)  But Donato provides no supporting evidence to show there is no other family member or caretaker who could provide the necessary care.   Accordingly, this Court cannot conclude Donato's family circumstances are a "extraordinary and compelling" reason to justify his early release.  See United States v. John, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (explaining that family circumstances must be "extraordinary and compelling," and "not merely the inevitable circumstances families face when a family member is incarcerated").

---

[14]     In his Second Supplemental Motion, Donato represents that his family doctor in Italy sent the Court medical records regarding his mother's health issues, which he says were rejected by the Clerk of the Court because the records were not in English.  (See Def's. Second Supl. Br., at 4, ECF No. 183.)  Even if any such medical records substantiated Donato's claim regarding his mother's health status, his argument fails because he has not established that he would, in fact, be the only available caretaker.

c.    *Rehabilitation*

Finally, Donato asserts that he should be released because his "remarkable record of rehabilitation" can be considered extraordinary.  (Def's. Br., at 6, ECF No. 164.)  Over his many years of his incarceration, Donato has indeed demonstrated a commitment to self-improvement.  He has learned the English language, obtained his GED, obtained several educational and vocational certificates, and has exceeded expectations across most, if not all, areas of his work in Food Service.  (See Ex. 1 at 24–27, Def's. Br., ECF No. 164.)  And as Judge Hurley recognized in 2021, Donato has maintained "an excellent disciplinary record" during his incarceration.  (See id. at 20, 27; see also United States v. Donato, No. 95-CR-223, at 14 (E.D.N.Y. Mar. 26, 2021) (ECF No. 158)).  Overall, Donato contends he "is not the same person that appear[red] for the first time before [the Court] in 1995." (Def's. Reply Supl. Mot. Br., at 4, ECF No. 188.)

Although Donato cannot rely on his commendable rehabilitation alone as a basis to justify a sentence reduction, see 28 U.S.C. § 994(t); accord U.S.S.G. § 1B1.13(d), this Court may consider his rehabilitation "in combination with other circumstances."  U.S.S.G. § 1B1.13(d); see also U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,255 (effective Nov. 1, 2023).  To be sure, the Court does not find that Donato's rehabilitation alone is so unique or remarkable as to constitute "extraordinary and compelling reasons" that would justify the reduction of his sentence.  But when considering Donato's efforts alongside his "Unusually Long Sentence" under § 1B1.13(b)(6), "extraordinary and compelling" reasons indeed exist to reduce his sentence to some degree.

## C.      Consistency with Applicable Policy Statements

The Sentencing Commission's recently promulgated Amended Policy Statement, unlike its predecessor, explicitly applies to compassionate release motions brought by incarcerated persons.  U.S.S.G. § 1B1.13 (beginning "[u]pon the motion of the Director of the Bureau of Prisons or the defendant ...) (emphasis added).  A sentence reduction is consistent with the current version of § 1B1.13 if, in addition to the existence of an "extraordinary and compelling reason," "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(a)(2).

Having already determined that there is an "extraordinary and compelling reason" for a reduction in Donato's sentence, this Court turns to whether Donato is a danger to the safety of any other person or to the community.  The Government argues that Donato, if he were released today, would "still represent[] a danger to the community."  (See Gov't Opp'n Br., at 19, ECF No. 174.)   Whether that may be is arguable and ultimately irrelevant.[15]  As explained below, the Court reduces Donato's sentence to 50-years instead

---

[15]      Donato committed several undoubtedly serious crimes of violence against innocent civilians.  See 18 U.S.C. § 3142(g)(1).  Donato's limited prior criminal history, however, did not involve violence, and his conduct during his more than twenty-seven years in prison is overwhelmingly positive and reflective of substantial rehabilitation.  (See Ex. 1 at 20 (FSA recidivism risk assessment), 25 (work performance evaluation), 26 (Individualized Reentry Plan–Program Review, dated May 26, 2020), ECF No. 164.)  As far as this Court can tell, Donato has only one serious incident reported in over twenty-seven years in prison, and, as of May 26, 2020, Donato had been incident free for over eight years.  (See id. at 20, 27.)  Moreover, as described above, Donato has demonstrated a commitment to self-improvement, learning the English language, obtaining his GED, obtaining numerous educational and vocational certificates, and in the process exceeding his supervisor's expectations across most, if not all, areas of his work.  (See id. at 24–27.)  Specifically, for fifteen years (from 2005 to 2020), Donato served as a chef for the Food Service at his facility.  (See id. at 24.)  At that job, he was described to provide "excellent quality of work on a daily basis," to have "very good initiative," to be "self-motivated," to perform "exemplary" tasks, and to be "dependable" enough for assignment to the Officer's Dining Room—"the pinnacle job in Food Service" where he would serve numerous outside agency visitors as well as Regional Directors, Directors, Auditors, Program Review Teams, and other esteemed visitors.  (Id. at 24–25.)  Ultimately, Donato "attained the highest paid position for inmate workers in Food Service.  He has earned his spot in that role due to his hard work, dedication, and his consistent professionalism in the department over the years."  (Id. at 25.)  Further, Donato is unlikely to be released into the community given his deportation order, which provides that he shall be transferred into ICE

19

of time served, and the Government does not argue Donato would represent a danger to the community if released in twenty-two years, at eighty-two years old.[16]   At that age, he will be statistically unlikely to recidivate.[17]   And "[w]hatever speculative risks of recidivism exist [in twenty-two years] are no greater than for any defendant who has served the time the legislature has decreed for the crimes committed."  See Haynes, 456 F. Supp. 3d at 517. Moreover, given the 50-years Donato will ultimately spend in custody, the evidence detailed about Donato's reduced recidivism risk, and the efforts Donato has already made at rehabilitation, there is no basis for this Court to conclude that Donato will represent a danger to the safety of others or to the community when he is eventually released from prison.

## D.      Section 3553(a) Sentencing Factors

Even if extraordinary and compelling reasons are present and a sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission," such a reduction must also be supported by "the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A); see also United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary

---

custody for deportation to Italy after he completes his sentence.  (See id. at 23.)  This reduces Donato's potential danger to the community.

[16]      As mentioned above, Donato's sentence on his six § 924(c) counts, if charged today in the same initial 924(c) prosecution, would be 40 years consecutive to his 10-year sentence for the conspiracy and the carjacking, for a total sentence of 50 years.  See First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403.  Currently, Donato has served approximately twenty-eight years of his prison sentence.  Thus, Donato still must serve 22 years of his sentence, subject to the previously imposed terms of supervised release.

[17]      See United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, p. 30 (December 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf  ("Among  offenders  released younger than age 21, 67.6 percent were rearrested compared to 13.4 percent of those released age 65 or older. The pattern is consistent across age groups, as age increases recidivism by any measure declined.  Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average.").

—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A).").  The §
3553(a) factors may serve as "an alternative and independent basis for denial of
compassionate release" or a sentence reduction.  Jones, 17 F.4th at 374 (quoting United
States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

"Application of the § 3553(a) factors requires an assessment of whether the relevant
factors outweigh the extraordinary and compelling reasons warranting compassionate
release ... and whether compassionate release would undermine the goals of the original
sentence." United States v. Daugerdas, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) (cleaned
up) (citation omitted).  The sentencing factors in § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote
>> respect for the law, and to provide just punishment for the
>> offense;
>>
>> (B)  to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the
>> defendant; and
>>
>> (D) to provide the defendant with needed educational or
>> vocational training, medical care, or other correctional
>> treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the
> U.S.S.G.] ...
>
> (5) any pertinent [Sentencing Commission] policy statement ...
>
> (6) the need to avoid unwarranted sentence disparities among
> defendants with similar records who have been found guilty of
> similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Many of the applicable § 3553(a) factors are incorporated in the Court's above discussion of "extraordinary and compelling" reasons, but the particularly egregious and repeated nature of Donato's crimes does bear separate remark.   Independent of the harshness of the former § 924(c) stacking regime, Donato committed very serious crimes warranting a sentence that reflects their seriousness and that justly punishes him.  See 18 U.S.C. § 3553(a)(2) (the purposes of a sentence are, among other things, "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").

Donato's arrest followed from a year-long investigation by the joint Federal Bureau of Investigation, New York Police Department Auto Larceny Task Force, and the Nassau County Police Department's Robbery Squad into a series of armed carjacking's.  See United States v. Donato, 1996 WL 34422555, at **3–8 (2d Cir. Dec. 20, 1996).  Donato did not target others involved in criminal activity.  Instead, on six separate occasions, Donato held innocent civilians at gunpoint, with some describing him as holding the gun mere inches from their faces.  (See United States v. Donato, No. 95-CR-223, at 2, 5 (E.D.N.Y. Mar. 26, 2021) (ECF No. 158)).  Simply put, Donato endangered the lives of his victims and many others nearby.  After one of his several carjackings, Donato speedily drove down a victim, only to be thwarted by the victim's firing of a lawfully possessed revolver at the approaching vehicle, hitting one of its side windows.  (See id. at 4–5.) Additionally, Donato's co-conspirator testified that he used BMW and Mercedes vehicles

that he stole to joy ride around town, boasting about the terror he caused.  (See Gov't Opp'n Br., at 18, ECF No. 174.)

Still, the balance of the § 3553 factors favor a reduced sentence.  There can be no serious dispute today that the 115-year sentence imposed on Donato is longer than necessary to achieve § 3553(a)'s sentencing objectives.  But even when this Court concludes that a sentence reduction is appropriate, it does not have to modify the sentence in a way that effectuates Donato's immediate release from prison.  See Brooker, 976 F.3d at 237 ("A district court could ... reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place.").  And the Court is not constrained to reduce Donato's sentence to what it would have been had it sentenced Donato today because Congress did not make the change to § 924(c) retroactive.  See Hughes v. United States, 584 U.S. 675, 681 (2018) ("If an amendment applies retroactively, the [Sentencing Reform Act of 1984] authorizes district courts to reduce the sentences of prisoners who were sentenced based on a Guidelines range that would have been lower had the amendment been in place when they were sentenced."); see also United States v. Williams, 2022 WL 1488695, at *9 (E.D.N.Y. 2022).  So, as a practical matter, the question before the Court is whether to reduce Donato's sentence to a term of less than 50-years—the sentence Donato would be subject to if he was charged in the same initial § 924(c) prosecution today.

Having considered the seriousness of Donato's six gunpoint carjackings targeting innocent civilians, the reasons collectively deemed "extraordinary and compelling" in the above discussion, and the totality of § 3553(a) factors, the Court finds that a reduced sentence of 50-years (of which Donato has served approximately 28-years), is sufficient,

but not greater than necessary, to satisfy the statutory sentencing objectives here. This sentence—still lengthy—respects the extremely serious nature of Donato's repeated offenses, reflects the need to effect general deterrence, provides just punishment, and promotes respect for the law. See 18 U.S.C. § 3553(a)(2)(A)–(B).

Donato encourages this Court to consider the disparity between his and his co-conspirator's sentences in calculating a reduced sentence. (See Def's. Reply Br., at 6, ECF No. 176.) Curiously, again, the Government does not respond to this argument directly. (See Gov't Opp'n to Supl. Mot. Br., ECF No. 186.) Although 18 U.S.C. § 3553(a)(6) "requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants," United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008), courts have looked to the disparity between co-defendants in granting sentence reductions in § 924(c) stacking cases.[18] See, e.g., Haynes, 456 F. Supp. 3d at 499; United States v. Davis, 2020 WL 6746823, at *2 (E.D.N.Y. Nov. 17, 2020). To be sure, the Court's analysis is informed by the few similarities and the many differences between Donato and his co-conspirator Ernesto Quintieri ("Quintieri"). See 18 U.S.C. 3553(a)(6); see also United States v. Stewart, 590 F.3d 93, 140 (2d Cir. 2009).

Quintieri—an associate of Donato's at the time of the offense conduct—testified as a witness for the Government at Donato's trial. Quintieri testified that he witnessed Donato commit the Silverman carjacking—one of Donato's six carjackings—from a distance. (See United States v. Donato, No. 95-CR-223, at 3 (E.D.N.Y. Mar. 26, 2021) (ECF No. 158)). Afterward, Quintieri drove to a prearranged spot and waited for Donato. (See id.) Twenty

---

[18]   There is no dispute in this case that Donato's 50-year sentence, if charged today in the same initial § 924(c) prosecution, would create a disparity with other defendants nationwide who have committed equally serious offenses.

minutes later, a "smiling" Donato arrived in the stolen BMW.  (Id.)  Quintieri entered the BMW and Donato drove to an area near a cemetery in Glendale, Queens.  (See id.)  Once there, Donato parked the BMW and proceeded to remove license plates from a vehicle parked nearby.  (See id.)  He then drove to Howard Beach, Queens where he stopped and switched the stolen license plates for the BMW's plates.  (See id.)  Donato then dropped Quintieri at home.  (See id.)  Thereafter, Quintieri saw Donato driving the BMW in the Ozone Park, Queens area several times during 1993 and early 1994.  (See id.)  Quintieri ultimately pleaded guilty to one count of conspiracy to defraud the United States under 18 U.S.C. § 371 and was sentenced to probation after testifying as a witness for the Government at trial.  (See Gov't Br., 1996 WL 34422555, at 3 n.1 (2d. Cir. 1996)).

Today's sentence reduction considers certain facts that reflect Donato's significantly greater culpability than Quintieri's:  It was ultimately Donato—not Quintieri —who lead the carjacking conspiracy, carried out the six carjackings, and committed the six § 924(c) offenses.  (See Gov't Opp'n Br. at 1, ECF No. 174.)  Moreover, Donato committed all his crimes while on probation for possessing other stolen cars.  (See id.)  Neither of the crimes Quintieri was charged with in the superseding indictment were firearms offenses.  (See Gov't Br., 1996 WL 34422555, at 3 n.1 (2d. Cir. 1996) (charging Quintieri with one count of conspiracy to defraud the United States under 18 U.S.C. § 371 and with one count of carjacking under 18 U.S.C. § 2119.).  Simply put, Donato and Quintieri were not even close to "comparably situated."  United States v. Byam et al., 12-cr-586, ECF No. 284, at 10 (E.D.N.Y. Oct. 24, 2022).  The two did not participate equally in the offense conduct; Quintieri, for his part, did not engage in violent acts.  So, unsurprisingly, the two were not charged in the same counts.  Based on this comparison,

today's reduced sentence of 50-years appropriately reflects the salient differences between Quintieri and Donato.  Ultimately, yielding more compatible sentences among the two does not warrant a sentence reduction past 50-years.

### IV.   CONCLUSION

For the foregoing reasons, Defendant Carlo Donato's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act is GRANTED in part, and his sentence is reduced to 50-years—subject to the previously imposed terms of supervised release.  The Clerk of Court is respectfully requested to serve a copy of this Order on the Pro Se Defendant.

**SO ORDERED.**

Dated:   April 8, 2024
         Central Islip, New York

                                        /s/ JMA
                                        _____
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE